## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| BENJAMIN GIBBS and KIRSTEN GIBBS, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil No. 3:23-CV-00622-K |
| v. | § § | |
| STATE FARM LLOYDS, | § § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant State Farm Lloyds's ("State Farm") Motion for Summary Judgment and Brief and Appendix in support thereof, Doc. Nos. 21–23, Plaintiffs Benjamin Gibbs and Kirsten Gibbs's Response to Defendants' Motion for Summary Judgment and Brief and Appendix in support thereof, Doc. Nos. 24–26, and State Farm's Reply Brief in Support of Its Motion for Summary Judgment. Doc. No. 27.

Upon consideration of the parties' submissions, the Court **GRANTS** State Farm's Motion for Summary Judgment. After Benjamin and Kirsten Gibbs found water damage around their bathroom, their insurer, State Farm, paid for them to replace the wood floors throughout their home. When they carried out the replacement, Mr. and Mrs. Gibbs discovered additional moisture and, unbeknownst to State Farm, authorized their contractor to flood cut their walls, strip out pockets of tile flooring, and dispose of cabinetry—including elevated cabinets outside the affected area. Mr. and

Mrs. Gibbs attributed the moisture to a new leak and looked to State Farm for reimbursement. State Farm demurred. Among other things, it says it cannot determine which part of the hidden moisture, if any, occurred because of the leak and which part, if any, occurred because of a known leak predating the coverage period under Mr. and Mrs. Gibbs's insurance policy. Mr. and Mrs. Gibbs filed this action against State Farm and asserted a series of claims for unfair settlement practices, misrepresentations, and similar wrongdoing but no claim for breach of contract. Most of the asserted claims are claims for benefits under their policy. Since Mr. and Mrs. Gibbs have not carried their burden of reasonably distinguishing some portion of the concealed moisture damage attributable to occurrences covered by the policy, they have not shown any right to recover the benefits. In support of their remaining claims, Mr. and Mrs. Gibbs contend that State Farm promised them coverage of the damage, but the record does not bear out this contention. For these reasons, the Court concludes that State Farm is entitled to judgment.

## I.   BACKGROUND

The Court begins with a review of the facts. Mr. and Mrs. Gibbs have hindered the Court's efforts to compile the relevant information by failing to include any record citations in their statement of facts and instead largely copying and pasting their pleading as a substitute. *See* N.D. Tex. L. Civ. R. 56.5(c) ("When citing materials in the record, as required by Fed. R. Civ. P. 56(c)(1)(A) or (B), a party must support each assertion by citing each relevant page of its own or the opposing party's appendix.").

As an aid to understanding the events at issue in this case, the Court provides a floorplan for the main level of Mr. and Mrs. Gibb's home. The top of the floorplan, which State Farm placed in the evidentiary record, corresponds to the northmost side of the home.



Doc. No. 23 at 213 (cosmetic modifications by the Court).

In July of 2021, Mr. and Mrs. Gibbs hired plumbers to fix a leak near the kitchen and westernmost bathroom in their home. *Id.* at 341–42. Several months later, they purchased homeowners' insurance from State Farm. *Id.* at 226–88. The insurance policy covered "accidental direct physical loss" to their home but not certain types of water damage. *Id.* at 261. Excluded from coverage were losses due to "continuous; repeating; gradual; intermittent; slow; or trickling" seepage or leakage of water that "occurs or develops over a period of time." *Id.* at 264 (enumeration omitted). Also

excluded were losses due to "condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time." *Id.* Coverage extended from December 11, 2021 to December 11, 2022. *Id.* at 228, 280.

In April, Mr. and Mrs. Gibbs filed a claim with State Farm for a new leak. *Id.* at 369. This leak appears to have centered on the eastern side of the home, around their primary bathroom, bedroom, and adjoining hallway. *Id.* at 36. A State Farm adjuster inspected the home and agreed to pay for some of the damage. *Id.* at 7–8, 90–91. After hiring an expert advisor, State Farm issued a cost estimate based on the assumption that Mr. and Ms. Gibbs would replace wooden floors throughout their house. *Id.* at 7–8, 90–115. State Farm issued payments and agreed to cover some of the Gibbs family's living expenses. *Id.* at 8, 96.

Although the evidence they cite is not clear on the timing, the parties appear to agree that Mr. and Mrs. Gibbs discovered a new leak in August or September. *See* Doc. No. 22 at 23; Doc. No. 25 at 5, 23. Subsequent investigation suggested that the leak occurred on the western side of their home, near the playroom. Doc. No. 23 at 9; *see also id.* at 366. In September, after discovering the leak, Mr. Gibbs raised the issue with State Farm at a high level of generality. He told the insurer that as replacement of the flooring proceeded, his contractor, MCC Construction and Restoration, was "finding additional damages." Doc. No. 23 at 9. State Farm sent a new adjuster to inspect the home the next day. *Id.*

The adjuster discovered that Mr. and Mrs. Gibbs had carried out significant demolition of their home beyond the removal of wooden floors. *Id.* MCC had flood cut drywall throughout the home, removed tile floors, and torn out and disposed of bathroom and kitchen cabinets, including elevated kitchen cabinets that had not suffered water damage. *Id.* 9, 376. Mr. and Mrs. Gibbs say that they were relying on MCC, who had shown them moisture readings and water damage behind their baseboards. Doc. No. 25 at 17; Doc. No. 26 at 258. State Farm's expert contractor opines that Mr. and Mrs. Gibbs were "updating [their] residence during the restoration process." Doc. No. 23 at 389.

After the September inspection, State Farm paid out another nearly $5,000 for the leveling of floors. *Id.* at 9, 190. Since MCC had submitted mitigation and restoration cost estimates totaling over $145,000, this was rather less than Mr. and Mrs. Gibbs might have hoped. Doc. No. 23 at 141–42, 184–85. State Farm's claims file indicates that Mr. and Mrs. Gibbs provided State Farm with photographs of their demolition efforts to try to show that State Farm should cover their costs. *E.g.*, *id.* at 40–44. Many photographs are in the record, most of which appear to depict the floors in their home after the removal of wooden flooring and adjoining fixtures, but it is unclear whether these are the photographs mentioned in the file. Doc. No. 26 at 32–160.

Whichever photographs State Farm received, they did not have the desired effect. The file reflects State Farm's belief that there was no visible water damage justifying the full extent of Mr. and Mrs. Gibbs's demolition and its concern that at least

some water damage in Mr. and Mrs. Gibbs's home occurred over a long time. *E.g.*, Doc. No. 23 at 40–44. Long-term damage raised the possibility that some or all of Mr. and Mrs. Gibbs's loss occurred prior to the applicable coverage period under their homeowners' policy or as a result of uncovered slow leakage or persistent moisture. *Id.* at 264, 280. Perhaps because of these concerns, the claims file indicates that State Farm's adjuster told MCC it would need a moisture map and moisture readings. Doc. No. 23 at 42, 45. There is no indication that State Farm ever got the full range of information it sought. *See id.* at 388–89; Doc. No. 22 at 27.

State Farm ultimately refused to pay for additional restoration work. In a letter dated October 20, 2022, an adjuster informed Mr. and Mrs. Gibbs that State Farm did not believe it had to cover any restoration expenses following the April leak or the later leak. Doc. No. 23 at 216. Among other things, the adjuster stated that Mr. and Mrs. Gibbs's documentation revealed "long-term" water damage in their home. *Id.* at 217–18. She also stated that at least some of the documentation showed no water damage, adding that the presence of moisture alone did not constitute damage. *Id.* Despite this conclusion, State Farm had paid out significant sums related to water damage. A summary document from around the same time shows that State Farm's total final outlay on Mr. and Mrs. Gibbs's water damages claims was about $75,000, divided among restoration work, packing and storage of Mr. and Mrs. Gibbs's property, and temporary housing of the Gibbs family. *Id.* at 221.

Mr. and Mrs. Gibbs filed suit against State Farm in the 193rd Judicial District Court of Dallas County.  Doc. No. 1-3.  They alleged that State Farm engaged in unfair settlement practices in violation of Texas Insurance Code Section 541.060, misrepresented their insurance policy in violation of Texas Insurance Code Section 541.061, and confused or deceived them in violation of Texas's Deceptive Trade Practices Act (the "DTPA").  *Id.* at 6–7.  In their petition, they requested damages in a sum they might have received if State Farm provided coverage for restoration work beyond the replacement of wood floors, plus treble damages, attorneys' fees, and compensation for mental anguish.  *Id.* at 8.  Their subsequent briefing does not address the request for damages due to mental anguish.  Doc. No. 25.

State Farm removed Mr. and Mrs. Gibbs's suit to this Court and now moves for summary judgment on Mr. and Mrs. Gibbs's claims.  Doc. Nos. 1, 21.

## II.  LEGAL STANDARD

The Court grants motions for summary judgment when there is no genuine dispute between the parties about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if a reasonable jury could resolve the parties' factual disagreement in favor of either party and the resolution could affect the outcome of their litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

## III.   DISCUSSION

The Court grants State Farm summary judgment on Mr. and Mrs. Gibbs's claims.   In the next two subsections, the Court explains the reasons for this decision. For purposes of simplicity in its analysis, the Court first addresses Mr. and Mrs. Gibbs's claims that State Farm violated the Texas Insurance Code by engaging in unfair settlement practices that did not involve misrepresentations to or confusion of Mr. and Mrs. Gibbs.   The Court refers to these as their unfair settlement practices claims for convenience.   The Court then addresses Mr. and Mrs. Gibbs's claims that State Farm violated the Texas Insurance Code or the DTPA by making misrepresentations to them or confusing them.

### A. The Unfair Settlement Practices Claims

The Court grants State Farm summary judgment on Mr. and Mrs. Gibbs's unfair settlement practices claims because Mr. and Mrs. Gibbs have not shown that any reasonably distinguishable portion of the damages to their home resulted from occurrences against which State Farm insured them.   The thrust of the unfair settlement practices claims is that State Farm wrongly denied Mr. and Mrs. Gibbs coverage under their homeowners' policy for water damage they found while remediating the April 2022 water leak in their house.   *See* Doc. No. 25 at 9–16.   Mr. and Mrs. Gibbs want to recover sums they think State Farm improperly refused to pay under the terms of the policy.   Doc. No. 1-3 at 8; Doc. No. 23 at 141–42, 184–85.   Since they do not distinguish which sums, if any, are attributable to damage caused by leaks covered under the

policy and which amounts, if any, stemmed from the July 2021 leak predating the coverage period, they cannot show that State Farm improperly refused to pay anything. The failure of their unfair settlement practices claims follows immediately. If State Farm never had an obligation to pay Mr. and Mrs. Gibbs benefits, its various allegedly wrongful practices caused them no harm.

The reasoning just summarized originates in basic principles of Texas insurance law. When "covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (citation omitted). Evidence that a covered event caused all of the damage or that covered and excluded events independently caused the damage is sufficient but not necessary. *See Advanced Indicator & Mfg. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022) (per curiam); *Dillon Gage Inc. v. Certain Underwriters at Lloyds*, 636 S.W.3d 640, 645 (Tex. 2021); *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004). If the insured fails to meet the required evidentiary burden, the Court must grant the insurer summary judgment on claims for insurance policy benefits. *Lowen Valley*, 892 F.3d at 170.

Under these standards, Mr. and Mrs. Gibbs have not shown that their home-owners' policy entitled them to payments from State Farm covering water damage discovered after the April 2022 leak. There is some evidence that an earlier leak predating the coverage period may have contributed to the damages, and Mr. and Mrs. Gibbs

have not provided additional evidence from which a jury could reasonably estimate the damages caused by the earlier leak, reject the inference that the earlier leak contributed to the damages, or find that a later leak independently caused some of the damages.

The earlier leak, which occurred in July 2021, was in the same general area of Mr. and Mrs. Gibbs's home where they found a new leak during the remediation of the April 2022 leak.  Doc. No. 23 at 9, 341–42.  There is expert testimony suggesting that at least part of the water damage found during remediation was older or the product of long-term exposure to moisture, which is consistent with the July 2021 leak contributing to the damage.  *Id.* at 388–89.  The damage was also at least partially concealed, which might explain why nobody identified it until Mr. and Mrs. Gibbs removed their wood floors.  Doc. No. 23 at 9.  Photographs filed by Mr. and Mrs. Gibbs as evidence of the damage overwhelmingly depict subflooring and other portions of the home that were hidden or obscured before the removal of the floors.  Doc. No. 26 at 32–160.  Since leaks that occurred before and after Mr. and Mrs. Gibbs had insurance from State Farm might have contributed to the damage without detection, the obvious insurance coverage question was which leaks contributed to the damage and how much they contributed to it.

Mr. and Mrs. Gibbs have no real answer.  They say that there was a recent leak, that there was moisture in their house around the same time, and that their contractor decided to take steps to reduce the moisture.  Doc. No. 25 at 21, 24.  This just restates half of the problem—that the recent leak may have contributed to the water damage

in the house—while ignoring the inconvenient half—that an earlier leak may have contributed, too. Based on Mr. and Mrs. Gibbs's submissions, the Court cannot conclude that there is any reasonably identifiable water damage for which they should have, but did not, receive coverage from State Farm. *See Lowen Valley*, 892 F.3d at 170–72 (affirming summary judgment for insurer where insured could not distinguish damaged caused by pre-coverage and post-coverage hailstorms); *accord Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 441–42 (5th Cir. 2016) (per curiam); *Faith Temple Church of God in Christ v. Church Mut. Ins. Co.*, 2018 WL 9869610, at *8–9 (E.D. Tex. Oct. 17, 2018); *cf. also Wallis v. USAA*, 2 S.W.3d 300, 304 (Tex. App.—San Antonio 1999, pet. denied) (affirming judgment notwithstanding the verdict for insurer where insured could show that leak contributed to foundation damage but could not show to what extent it contributed).

Because Mr. and Mrs. Gibbs have not shown that State Farm owed them benefits under their homeowners' policy, they cannot prevail on their unfair settlement practices claims. Their goal in asserting those claims is to recover unpaid benefits, but the evidence does not show that State Farm should have paid the benefits. Insureds may not use claims under the Insurance Code as vehicles for recovering benefits their insurer never owed them. *Lowen Valley*, 892 F.3d at 172 (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018)); *Tchakarov v. Allstate Indem. Co.*, 2021 WL 4942193, at *7 (N.D. Tex. Oct. 22, 2021) (Fitzwater, J.). There is an exception to this rule for cases in which the insurer's improper practices cause its insureds to

11

suffer injuries that do not flow from the denial of benefits, but Mr. and Mrs. Gibbs do not contend that this exception applies to their case. *Prime Time Family Ent. Ctr., Inc. v. Axis Ins. Co.*, 630 S.W.3d 226, 234 (Tex. App.—Eastland 2020, no pet.); *Becerra v. Allstate Vehicle & Prop. Ins. Co.*, 2021 WL 1135031, at *3 (S.D. Tex. Feb. 3, 2021). It is hard to see how it could since the grievance at the core of their unfair settlement practices claims is that State Farm made what they view as a highly unreasonable decision to deny them benefits. *See* Doc. No. 25 at 8; Doc. No. 1-3 at 4–5.

## B. The Misrepresentation and Confusion Claims

The Court grants State Farm summary judgment on Mr. and Mrs. Gibbs's claims based on misrepresentation and confusion. To the extent Mr. and Mrs. Gibbs are claiming that State Farm denied coverage based on a misleadingly narrow description of their homeowners' policy, these claims run into the same problem as their unfair settlement practices claims: Mr. and Mrs. Gibbs have not shown any wrongful denial of coverage. *See Atkinson v. Meridian Sec. Ins. Co.*, 2022 WL 3655323, at *6 (W.D. Tex. Aug. 24, 2022); *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 2020 WL 7259335, at *4 (N.D. Tex. Dec. 10, 2020) (Boyle, J.); *Philadelphia Indem. Ins. Co. v. Megalomedia, Inc.*, 621 F. Supp. 3d 767, 774 (S.D. Tex. 2022). Mr. and Mrs. Gibbs also appear to argue that one of State Farm's adjusters promised to cover water damage if Mr. and Mrs. Gibbs discovered it while remediating the April 2022 leak. Doc. No. 25 at 16. This theory is somewhat different, but the record does not support it.

A review of the page in State Farm's claim file on which Mr. and Mrs. Gibbs base the theory is unilluminating.  In what seems to be the most relevant portion of the page, the text records that a State Farm adjuster told Mr. Gibbs that he and his wife "would need photos to document additional damage" and that Mr. Gibbs told the adjuster "he would have the [contractor] remove the toekick to confirm water damage and submit photos."  Doc. No. 26 at 253.  Nothing in that exchange constituted a promise of coverage.  Mr. and Mrs. Gibbs add that they were relying on their contractor for "guidance," but the Court fails to see the relevance of this fact.  Doc. No. 25 at 17. Mr. and Mrs. Gibbs may believe that their contractor misled them into approving unnecessary or uncovered repairs to their home, but they have not sued the contractor.

In addition to the mismatch between Mr. and Mrs. Gibbs's claims and the record, the Court also notes a mismatch between at least some of the claims and the statutory provisions on which they rely.  Mr. and Mrs. Gibbs bring claims under Sections 17.46(b)(2) and 17.46(b)(3) of the DTPA, which define actionable "false, misleading, or deceptive acts or practices" to include "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" or as to one's "affiliation, connection, or association with, or certification by, another."  Even if Mr. and Mrs. Gibbs had evidence that a State Farm adjuster misled them about their coverage, their "confusion or misunderstanding" would have nothing to do with the "source, sponsorship, approval, or certification" of their insurance product or State Farm's "affiliation, connection, or association with, or certification by," someone other

than State Farm.  Without that connection, the claims under Sections 17.46(b)(2) and 17.46(b)(3) must fail.  *See Bradford v. Vento*, 48 S.W.3d 749, 759 (Tex. 2001); *Cox v. State*, 448 S.W.3d 497, 505 (Tex. App.—Amarillo 2014, pet. denied); *Mobile Cnty. Mut. Ins. Co. v. Jewell*, 555 S.W.2d 903, 911 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.).

## IV.    CONCLUSION

The Court **GRANTS** State Farm's Motion for Summary Judgment and **DIS-MISSES** Mr. and Mrs. Gibbs's claims with prejudice in their entirety.  A final judgment will issue separately.

**SO ORDERED.**

Signed April 19th, 2024.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

14